versus Oyeyemi Owagboriaye. Morning, Your Honors. Did I get that correct? The name of the client? Yes. Owagboriaye. Owagboriaye. And Ms. Bhadrani is here for the appellant. Mr. Wu is here for the government, and you may begin. Thank you. Morning, Your Honors, and may it please the Court, Mr. Owagboriaye. The government decides who to charge, with what offense, and with what evidence, and it does so on a daily basis, and it chose wrong in this case. I'd like to start by discussing the sufficiency of the evidence as to the substantive wire fraud count before moving on to the material variance issue and the suppression issue if I have time remaining. When deciding to charge Mr. Owagboriaye with committing substantive wire fraud based upon the $835,000 transfer, the government attempted to fit a square peg into a round hole. It tried to stretch the circle to fit the square when there was a square available to it the entire time. It now seeks the Court's assistance in extending the reach of the wire fraud statute beyond what the plain text of the statute and the case law support in order to make up for its charging error here. The government, both below and in its briefing before this Court, defined the scheme to defraud in this case as follows. The scheme in this case was for the defendant, Zubero, and their other partners in crime to lure the victim into sending an advance fee, the $2.1 million, in exchange for the false promise of a $20 million loan. Your argument, as I understand it, is that the conspiracy was complete on September 11, 2014, when Zone 4 gave Zubero the $2 million? Well, not the conspiracy, but the scheme to defraud as planned by the defendants. Yes, at the latest, at September 11. The scheme to defraud was over when? At the latest, at September 11, when Zubero transferred the money out of the alleged account that the victims transferred the money into and into his separate accounts. What does that mean? He withdrew from the scheme to defraud? He withdrew after he got his cut of the $2 million? Well, he didn't get his cut. He got the fruits of the fraud, and so did Mr. Oluagbaraye at that time, per the law on wire fraud, because Mr. Oluagbaraye was charged as a principal here, and so when the money was transferred from the victim to Zubero and then transferred out of the account by Zubero, every defendant or every co-conspirator or every participant in the fraud got their cut. I guess that's what I'm asking. So once he got his money, then I'm not a part of the scheme. I'm not a part of the conspiracy anymore. Is that your argument? It's not that you're not part of the conspiracy anymore, because a conspiracy can be an ongoing venture, but the scheme to defraud is a little more narrowly defined than the overall conspiracy that they charged in this case. So he was convicted of participating in the conspiracy and acquitted of the wire fraud. He was, is the opposite. He was acquitted of the conspiracy and convicted of the substantive wire fraud offense. And so... I have a question about why wouldn't the dispensation of fraudulent proceeds to the co-conspirators in the fraud be part of the execution of the scheme? So the wire fraud statute is very specific about the wire transfers needing to be in furtherance of the scheme to defraud, and that is, the scheme to defraud obviously incorporates the misrepresentations made to the victim in order to get the victim to, to part with their money. And so the wire transfer has to, in some way, effectuate the misrepresentations that were made in order to get the victim to then send the money. And that occurred at the latest on September 11th, when the money was irrevocably transferred out of that joint, alleged joint account and into Mr. Zubero's, and accessible to Mr. Owagwarae as a principal in this offense, into that account. From that moment, they were irrevocably in possession of the funds, and the victim was dispossessed of all of its money. So... In a somewhat related vein, there were some, there were some representations by Mr. Zubero in December of that year, after the wire transfer occurred, that, that effectively caused the Why wouldn't that have been part of the same scheme? So I think you're referring to the emails that he was sending, just he was sending to the victim saying, I don't know where your money is, I'm working on it, or whatever his representations were. And I, I think the government below tried to characterize those as lulling transactions, but that a transaction is lulling doesn't itself extend the defined contours of a scheme to defraud. And... Scheme to defraud, but it would have had to have been charged differently. Correct. Those potentially maybe could have been charged as wire fraud at, and gotten in, into the defined scheme to defraud as lulling transactions. But every lulling case we've seen from the Supreme Court, and even in the cases cited in the government's brief, the actual wire at issue is what was lulling. It has to be communicated to the victim, because the purpose of the lulling communication is to forestall the victims from complaining, going to the authorities, taking action that would sort of lend the defendants to being found guilty of committing a crime. And so this transaction was never communicated to anyone, and it wasn't in furtherance of any execution of the scheme to defraud. There was no purpose to this transaction with regard to the victims of this case in terms of their money, because their money was irrevocably lost to them at the latest on September 11th. And I think the confusion stems from the fact that wire fraud is a victim-facing offense, and so I think what the government is trying to do is define a scheme to defraud from the perspective of the defendants, from the perpetrators. And really, the scheme is defined from the perspective of the victim, and when they relied on the misrepresentation, and were then dispossessed of their money. And in this case, that occurred at the latest on September 11th. And so that is the crux of the argument about why this particular transaction could not be wire fraud, per the defined rule, like language of the statute and the case law. Potentially other transactions were chargeable to this defendant as wire fraud. Potentially other crimes were chargeable to cover this after-the-fact transfer of funds, but this particular transfer was not wire fraud under the plain terms of the statute and the case law. So relatedly, if there are no further questions on this issue, I wanted to address the material variance issue, which involved the memorandum of understanding that the government admitted under strenuous objection by the defense, and the MOU... Before you go on to that, I do have a question for you. You're appealing the conviction, not the sentence. I'm curious, has this gentleman been released from prison? He actually has been out on bond pending this appeal. He received a sentence of 24 months. Yes, I saw that. I didn't know if he was incarcerated and been released. No, no. I mean, thankfully for him, during the course of the pandemic, was able to remain out of prison during the pendency of the appeal. The government in this case relied on this separate secondary memorandum of understanding between Mr. Zubero, Mr. Oagbaraye, and this gentleman, Joshua Aoudou. And this separate agreement outlined a separate set of facts, a separate set of obligations, a separate set of responsibilities. It was for this trade platform to raise money for investors regarding an oil field. And in the agreement, Zubero was to transfer $1.1 million to Oagbaraye with this express covenant that Oagbaraye not touch the money and it remain in the account. Now, the government said that they were introducing this memorandum of understanding to prove Mr. Oagbaraye's knowledge and participation in the conspiracy. But really what happened in the case and what they closed on was Mr. Oagbaraye's obligations under this other contract and that he had breached his obligations under this other contract. And those were the last words the jury heard. They heard, please look at the MOU, please look at the signature. He knew he wasn't supposed to transfer the money and he transferred it. And then we get back a verdict that's not guilty on the conspiracy, but guilty on the underlying substantive wire fraud count. And so the argument we're making is that this MOU, this uncharged, and the government said in its brief that the MOU and its presence is nowhere in the indictment. This uncharged other agreement, other scheme. Does it show substantial prejudice though, if it was on the exhibit list and it was referenced in the affidavit that he filed in his civil action against Zubero? Well, it was on the exhibit list, but it was strenuously objected to. And the objection maintained throughout was that this was not an agreement that he signed and that was not his signature on the agreement. And it had been kept out for the majority of the trial before the government found another source from which to enter this into evidence. But the issue is that the agreement allowed the government to establish facts that were materially different from what they charged in the indictment and materially different from the case which he prepared in defense of this other charge scheme to defraud. And their argument shifted so dramatically in closing. It went from this $2.1 million to, look at this other agreement. This is the one. It demonstrates that there was some sort of... Pretty high bar to show substantial prejudice. But what do you have to say about the jury instruction issue? So we also would agree with the court, at least as to aiding and abetting, the jury instruction should have been given. It was a correct statement of the law. It was an instruction that had not been given. What do you have to say about the government's covered by the other instructions that were given in the case? There was no instruction that said that a person cannot aid and abet an already completed crime. And in fact, that was the crux of the defense was that this crime completed per the terms of the wire fraud statute before this wire transfer occurred. And so it would have been helpful to the jury and it was prejudicial to Mr. Olagbaraye for the court to not give that instruction. And because it was a correct statement of the law and it was not covered by the given instructions, I think the government's argument was, well, you can infer it from the instructions, but it's not there. It doesn't appear there and it is a correct statement of the law. And so it did impair his defense because the jury was left without this instruction that if they agreed with the defendant that this is when the scheme completed, there could be no abetting liability as to the substantive wire fraud count. Why was it the United States versus Atkinson cited in your initial brief? That it was an oversight by my part. I was doing further research and preparing for the case and came across the bank fraud language in that case that was on point for this case in terms of, there may be multiple parts to a criminal venture, but for the fraud aspect, the evidence to be considered is very limited. And in this case, the government just failed to meet its burden. Thank you, counsel. Mr. Wu. Good morning, your honors. May it please the court, Jason Wu on behalf of the United States. I'd like to start by quoting a line from my opponent's brief, page 48. This relates to the scope of the wire fraud issue. To determine whether a wire was sent before or after the perpetrator at the time ended. And the authority quoted there is Schmuck, the 1989 Supreme Court case. So contrary to Mr. Owagbaraye's representations this morning that the wire fraud statute is inherently victim facing, when it comes to defining the scope of a scheme, we look at what was conceived by the perpetrator at the time. That's the teachings of Schmuck. But you, you would agree though, that the criminal conduct or the scheme, I guess, is defined by what the government describes as the scheme. Would you agree in the indictment? I agree. And the scheme as defined in the indictment always included steps subsequent to the deprivation of the victim. And which, which particular aspects of the screen, the schemes description, do you rely on for that? Sure. So in the indictment, in the discussion of the entire conspiracy, which we consider to be coterminous with the scheme as alleged, because the two counts largely replicate each other. And the paragraphs are incorporated in each other. We expressly alleged the September 2014 meeting in London. So that's paragraph seven on page four of the indictment. And on page eight, we allege the October 3rd, 2014 wire as part of the plan of the conspiracy. And to try to bring this just into very common sense terms, we have to think about this from the perspective of the perpetrator, the alleged perpetrator, the proven perpetrator, Mr. Owagboraye. When he concocted the scheme with Zubero and the other co-conspirators, was his scheme to solely enrich Zubero? Was his scheme a scheme that ended at the moment that the victim lost his money, but Owagboraye had zero dollars in his bank account from the victim? Or was his scheme, as the purpose of the scheme is alleged in the indictment, to obtain the victim's money through his co-conspirators and through misrepresentations, and then unlawfully use it for himself and for his own benefit? So when you conceive of the scheme in that way, it fundamentally has two halves. The first half, get the money from the victim. Second half, get the money into my pocket. And that second part was not completed until he was convicted. And that was the 2014 wire that we charged. And again, you know, we can think about this a few different ways. I would say, here are three principles that we identify through the case law. And I think to some extent, both us and Owagboraye agree with these principles. The first is that whether a wire furthers a scheme and is part of a scheme does not depend on its timing. And in both his supplemental authority letters and in his reply brief, Mr. Owagboraye appears to agree with this. He says there's no absolute prohibition on charging a wire or a mailing that happens after the victim has lost its money. And we derive that from a lot of cases that we've cited, but primarily Sampson from the Supreme Court, Evans, the decision of this circuit, and Laferriere, which was the old Fifth Circuit case that had that kind of colorful language that said wire fraud does not turn on time or space. The second principle, again, and this is something where we agree with Owagboraye, is that a post-loss accounting between victims is not going to constitute wire fraud. And that's the proposition that he derives from Kahn. And we agree with that. So to give a concrete, you know, try to make that more real, I'll give a hypothetical that's close to the facts of this case. Imagine that Zone 4, the victim Nigerian entity, contacted its insurance company after two months of frustration. And it kind of asked about what kind of fraud protection do I have? And can I file a claim related to this case? That communication would not be a chargeable act of wire or mail fraud. It would be just like the communication between the banks and Kahn. It would be only about which victim bore the loss of the offense. And of course, from the perspective of the perpetrator, from Mr. Owagboraye's perspective, he did not care whether Zone 4 ate the loss or Zone 4's insurance company ate the loss. So that's how Kahn applies in this case, and that's the extent to which its holding applies. The final proposition or principle that we derive from the case law, and I think we may have a little disagreement here, is that the post-loss distribution of proceeds to accomplices is an act of wire fraud or mail fraud. And for that proposition, we've cited a number of cases, including Rohoff from the Seventh Circuit, Ruzicka, which was in our supplemental authority, and Silvano and Isaacs, which are two other cases in our original brief. I'd like to switch gears for a minute and talk to you about the search warrant here. Sure. You know, couldn't the government have tailored the Gmail warrant more narrowly? You got the entire contents of the Gmail account. Isn't that a general exploratory rummaging, which we're really not supposed to do? It is not, Your Honor, and the warrant proceeds in two stages. So the way that an email warrant, like this one, ensures particularity is that it first requires a broad initial disclosure, but it gives the government a very specific target to aim at. It says when you start looking through that return, you are looking for evidence of the offenses of wire fraud and conspiracy to commit wire fraud. It gave a date range, and it identified some of the relevant parties involved, like Zubero, Consortium for a specific scheme. But didn't they really have carte blanche to search the account multiple times over an unspecified period of time? The warrant did not contain restrictions in that vein, that is true, but that is totally in conformity with Rule 41, which says that the time limits that are generally imposed on warrant returns, like the 10-day time limit that's in the current version of the rule, apply to the original acquisition of the data, meaning you have to go to Google and download the data from Google within 10 days. But Rule 41 expressly says that those time limits do not apply to any subsequent off-site review. And the analogy, I think it's not that different than a physical document, Your Honor. If you go search a house and you pull a bunch of notebooks out of it that contain fraud evidence, you might look at that the week after you do the search warrant and see some evidence. I'm sorry to interrupt, but the difference there seems to be that the notebooks that you pulled out, you pulled out because they satisfied some preliminary indicia, I guess, of fraud, right? And here, you all asked for all communications from January 1st of 2014 on. The other interesting thing related to that, I thought, was that the agent made... If we look at the three searches that the agent made, one was, the initial one was, all communications between Zubero and the defendant here. So that's the first one. The second one was, I guess, all financial records that were attached to any kind of emails. And then the third one was after the discussion, I guess, with the defendant here, the agent went back and pulled some documents probably related to what the defendant had discussed, I guess. So the first two, at least to me, suggest that those could have been parameters that the government could have placed on the Gmail account. In other words, that Google could have culled, right? Google could have... If the government had asked for all communications between Mr. Zubero and the defendant, and for all financial records that are attached, that would have been something that Google could have done, would it not? So I disagree with that, Your Honor, on this record. I admit, I'm not absolutely sure whether that's possible or not. But on this record, the defense did not present any witness below to test to Google's capability to do subject matter limitations on its search returns. And I don't think there's... So there's nothing in the record that shows that. And taking a step back, that goes to the argument that we made in our brief, that under this particular standard of review, he cannot prevail in this case. He chose not to bring a facial constitutionality claim below. And of course, we've been talking about facial constitutionality here so far. Since he chose not to bring it below, there are two options. The first is that you can because he repeatedly and expressly disavowed that claim. And I can quote, if you want, the parts of the record where he says so. But the second fallback is that it would be reviewed for plain error only. And on plain error review, he would have to show first that there's error. He cannot do that because there's no record evidence that Google had greater capability. And second, he would have to show case law, binding case law from this court or the Supreme Court, striking down a similar kind of warrant. And he cannot do that either. The closest he got is dicta from Blake, which is a distinguishable decision where the panel said that it ultimately need not decide the issue presented here. Would the good faith exception to the exclusionary rule also apply to this issue? It does, Judge Wilson. Thanks for bringing that up. So to the extent this court is reviewing the facial constitutionality part of the claim, then the good faith exception also would apply. Would you rely on the Nicholson case? I do to a limited extent. So the reason that we cited Nicholson and the supplemental authority is it addresses the earlier question you asked, Judge Covington, which is you asked, is it OK that this warrant was reviewed multiple times over a period of months? And the point that I drew from Nicholson is that it says there's no durational requirement or time limit incorporated in the Fourth Amendment itself. So that means when you're addressing, this is to the second claim he has, which I agree is preserved, which is the unconstitutional execution claim. The question there is, did the government exceed the bounds of the warrant? And so the officer here reading that warrant could not have found a time limit or a limited number of reviews in the warrant itself. And then there would be no reason for the officer to think that the Fourth Amendment inherently embodied such a limit because, as Nicholson tells us, there is no durational rule in the Fourth Amendment itself. With the time that you have left, would you address the jury instruction issue? His entire theory of defense was that you can't and a better crime that was already committed. And so your argument is that it was the that instruction was already covered by the other instructions given in the case. Correct, Your Honor. I don't I don't I mean, I'm looking at the instruction that was given. Sure. So the part that I'm going to read it to you now, it says, but finding that a defendant is criminally responsible for the acts of another person requires proof that the defendant intentionally associated with or participated in the crime, not just proof that the defendant was simply present at the scene of a crime or knew about it. You think that's that's enough to cover what he's intended? I do think so, Your Honor, because of what we would all naturally understand the meaning of intentionally participate to mean. So to give another, you know, again, hypothetical, if I walk out of this courtroom and I talk to a colleague 30 minutes after my argument is over and they discuss how the argument went with me, would anyone say that my colleague had intentionally participated in the argument with me? Participation means they're there while it's happening. But it's speaking in court. You can't aid and abet a crime that was already committed. I mean, that's. I certainly agree with that, Your Honor. OK, and my point is that the language intentionally participated in a crime suggests that they're there while the crime is ongoing. I think it's a natural implication of the language. And by the way, if this were a problem, right, keep in mind this district judge selected and used the pattern instruction for aiding and abetting in this circuit. If that were a problem, you would think that that would be in the pattern because then that would potentially be an issue in many cases that there could be confusion about whether the crime was complete or not. But I'm not sure we would want to rely on that. Right. Because there are many things that are not in the pattern instruction that for whatever reason, you know, a defendant doesn't bring up. But if a defendant brings it up and it's a correct statement of the law and it's not otherwise covered in the jury instructions, the defendant is entitled to have that included in the jury instructions, regardless of whether it's in in the pattern instructions or not. Right. Well, I think that goes to the second part that you identified, which is not substantially covered. I'm not saying that this is a case or isn't a case where that's the situation. I'm just saying I'm not sure I would want to rely on the fact that it was just a pattern instruction and therefore we should expect it would be in there if it needed to be. Sure. Fair enough, Your Honor. My point is this specific claim related to the timing of the offense and whether it was complete is sort of embodied or implied by the language of the pattern, which is the language of the instruction that this judge gave. Again, the language intentionally participate. I truly cannot conceive in my mind how you can just like, like I said, with the example of this oral argument, who could say that I intentionally participated in this argument if, God forbid, I was an hour late and missed it. And, you know, I'm sure I'd have to deal with an angry order from the court about that. But, you know, how would I say that I had intentionally participated just by filing my briefs or just by showing up later and apologizing for missing it? It doesn't really make any sense to me. So that's what I mean. The language of the instruction that was given already encompasses the notion that the crime would have been incomplete at the time that the defendant joined it. And in this regard, you know, I think we've discussed this idea of, you know, does a defendant have enough in the instruction to use as a springboard for his closing arguments? And again, like imagine the defendant stood up and pointed at that instruction to the jury and said, see, I had to intentionally participate in the crime. That means the crime had to be ongoing when I got involved. And it wasn't ongoing. That would have been his argument in closing. So that would have been more than adequate as a basis for him to make that argument to the jury. Your Honors, I just want to fundamentally stress, I think the defense posture here is trying to suggest that this is quite an unusual case or an exceptional case and that you can strike down this case without any collateral consequences. And that's not true. On the warrant claim, this is a standard email search warrant approved every day all over the country in many jurisdictions. So reaching a holding that doesn't necessarily mean I mean, the fact that it's done a lot isn't a reason to uphold it. I mean, if it's not unconstitutional, right? That's a reason to uphold it. But the fact that it's done a lot, I just don't think that's a reason to uphold it. Am I missing something here? I would add the caveat that the Fourth Amendment, you know, as as many cases have said, the ultimate touchstone of the Fourth Amendment is reasonableness. So the fact that many judges are reaching the same outcome and my opponent cannot appoint to a single circuit case any appellate decision from a federal appellate court that struck down this type of warrant is indicative of its reasonableness. And then the second point I was going to make is on the scope of the wire fraud statute. Again, this is not an unusual charge or an unprecedented charge. This is a charge of a wire that paid off one of the accomplices to the scheme. And that's classic wire fraud. So for those reasons, we respectfully ask the court to affirm Mr. Oluagbaraye's conviction. And thank you for your time. Thank you, Mr. Wu. We'll hear again from Ms. Badrani on rebuttal. Thank you, Your Honor. So I want to first address the government's contention as to the wire furthering the scheme to defraud here and draw your attention to the Atkinson case, because the government's argument here mirrors the arguments that the court struck down in Atkinson regarding a fraud proceeding in phases. In phase one was this. In phase two was that. In phase three was the other thing. And the court in Atkinson was very clear with regard to the bank fraud statute, which is materially similar to the wire fraud statute, that it's really only the second phase, the transfer of money from the victim bank or here, zone four, to the defendant, like the victim transfer. And I think the Supreme Court cases cited to by the government back that up. It's when the transfer from the victim occurs to the defendant. That is the wire that is chargeable as wire fraud. And that's just not what . . . Why couldn't the jury come to the conclusion that he helped create a paper trail to convince zone four that Zubero was getting the loan to finance the oil tank? And he helped convince the victims of the crime that he could get them their loan, and then you got the emails, and he got 46% of the $2 million, which is four times what Zubero kept. If we look at this evidence in the light most favorable to the government and draw all reasonable inferences and credibility determinations in favor of the government, seems like that's enough for the trier of fact to establish guilt beyond a reasonable doubt, isn't it? I don't believe so. The case law just does not support that reasoning. For lulling, for example, to be the reason that the wire . . . and after the fact wire and after the fact transfer could count, the wire itself would have to have been communicated to the victims to lull them, and it was not done so here. There were separate lulling emails, potentially, from Zubero to the victims, but this wire was never communicated to the victims. And then as for the idea that this was an ongoing scheme, it plainly was not an ongoing scheme, and I don't believe that was the government's argument either. The minute the victims transferred the money into the escrow account that they were told was untouchable, Zubero transferred out all of the money immediately, and so there was no loan that he was working on. There was no plan to extract further money from the defendants beyond the $20 million that he had promised them, the $2 million he had gotten back in return. And so anything that occurred after that between him and Mr. Owagboraye, it could have been any number of other things. It just wasn't substantive wire fraud, and that's the problem here. So his own closing argument was his lawyer permitted to argue to the jury that you can't aid and abet a crime that had already been committed? I think they were permitted to argue and did argue that the wire fraud crime completed when Mr. Zubero obtained the funds, and so the transfer in furtherance that was not in furtherance of the scheme to defraud. However, the harm that comes from not having a correct statement of the law as a jury instruction is that the jury is just listening to argument from the lawyers when they should have received an instruction of law guiding them and allowing them to come to that conclusion if they believed the theory of defense in this case. And so that that was the prejudice faced by Mr. Owagboraye because he was very clear from the start of this litigation that this particular transfer was not wire fraud. And I see that my time has completed and so there are no further questions. We ask that you vacate his conviction. All right, the case was well argued. Thank you, counsel.